Daniel RUGGIERI, et al.,
Plaintiffs, Appellants,

v.

WARNER & SWASEY COMPANY,
Defendant, Appellee.

No. 90–1734.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1990.
Decided July 11, 1991.

---

when defendant-appellee Warner & Swasey Co. discharged them from their employment during the winter of 1985–86. Shortly thereafter, plaintiffs filed age discrimination charges with the Massachusetts Commission Against Discrimination ("MCAD"), which forwarded their complaints to the Equal Employment Opportunity Commission ("EEOC"). When relief was not forthcoming from either agency, plaintiffs commenced an action in federal district court under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, but missed the statute of limitations deadline originally applicable to their ADEA claims. Plaintiffs attempted to save their rights of action through recourse to an extension of the limitations period which Congress enacted into law as the Age Discrimination Claims Assistance Act, 29 U.S.C. § 626 note ("Assistance Act"). The district court dismissed plaintiffs' action on the ground that their ADEA claims were not saved by the Assistance Act.

Christy A. Pano with whom Pano & Maloney was on brief, Worcester, Mass., for plaintiffs, appellants.

James E. Wallace, Jr. with whom Karla J. De Steuben and Bowditch & Dewey were on brief, Worcester, Mass., for defendant, appellee.

Before SELYA and CYR, Circuit Judges, BOWNES, Senior Circuit Judge.

CYR, Circuit Judge.

Plaintiffs-appellants Daniel Ruggieri, Anthony Frankian, Stephen Radzik, and Paul Bisceglia were nearing retirement age

## I

## DISCUSSION

The Assistance Act was enacted on April 7, 1988 for the benefit of ADEA claimants whose right to sue their employers had lapsed pending EEOC processing of their administrative claims. *See* 29 U.S.C. § 626 note § 2(2). The Assistance Act established a 540-day extension period, which was supplemented by an additional 450-day period upon enactment of the Age Discrimination Claims Assistance Amendments of 1990, Pub.L. No. 101–504, § 2(a)(5), 104 Stat. 1298 (1990) ("1990 Amendments"). In order to qualify for either extension period, a claimant must meet certain requirements in subsection 3(a) of the amended Assistance Act.[1] We are primarily concerned with subsection 3(a)(2)(B).

---

1. Section 3(a) of the amended Act states:

    (a) Extension.—Notwithstanding section 7(e) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 626(e)) [subsec. (e) of this section], a civil action may be brought under section 7 of such Act [this section] by the Commission or an aggrieved person, during the applicable extension period if—

    (1)(A) with respect to the alleged unlawful practice on which the claim in such civil action is based, a charge was timely filed under such Act with the Commission after December 31, 1983,

## A. Notice of EEOC "Disposition"

■ The district court ruled that plaintiffs had satisfied all of the Act's requirements except subsection 3(2)(B) (subsection 3(a)(2)(B) of the amended Act), which bars recourse under the 450-day extension by claimants who have received timely written notice from the EEOC "of the *disposition* of such charge and of the right to bring a civil action on such claim." (emphasis added). The district court based its ruling on an EEOC letter which was sent to each plaintiff.[2]

Plaintiffs do not dispute the correctness of the district court ruling that the EEOC letter satisfied the second prong of subsection 3(2)(B)—by informing them of their right to bring a civil action against their former employer. Instead, plaintiffs argue that the court erroneously concluded that the letter notified plaintiffs "of the disposition of [their EEOC] charge," as required under the first prong of subsection 3(2)(B). We agree that the letter did not inform plaintiffs of the "disposition of their charge."

The term "disposition" connotes "finality,"[3] whereas the EEOC letter was provisional in nature; viz. *"unless you are notified otherwise,* we plan no action regarding the charge under the Federal Age Discrimination in Employment Act (ADEA)." (emphasis added). The provisional nature of the notification is further substantiated by the statement that plaintiffs were free "to file a private suit at any time after the expiration of sixty (60) days from the charge filing date noted above [June 2, 1986] *notwithstanding any action by the Commission or the state agency."* (emphasis added).

The advice that the EEOC was planning no action at the time the letter was written (July 10, 1986) plainly did not foreclose agency action at a later date. Thus, viewed in its own temporal context, the provisional nature of the "no action" notification became even more apparent. So little time had elapsed since the filing of these four administrative charges that it would appear to have been impossible, as a practical matter, to arrange and conduct a

---

(B) with respect to the alleged unlawful practice on which the claim in such civil action is based, a *charge was timely filed* under such Act *with the Commission after April 6, 1985.*

(2) *the Commission did not, within* the applicable *period* set forth *in section 7(e)* [subsec. (e) of this section] *either*——

(A) *eliminate* such alleged *unlawful practice* by informal methods of conciliation, conference, and persuasion, or

(B) *notify such person,* in writing, *of the disposition of such charge and of the right of such person to bring a civil action* on such claim,

(3)(A) with respect to a claim described in paragraph (1)(A) the statute of limitations applicable under such section 7(e) [subsec. e of this section] ran before the date of the enactment of this Act [Apr. 7, 1988], or

(B) with respect to *a claim* described *in paragraph (1)(B) the statute of limitations* applicable under such section 7(e) [subsec. e of this section] *runs after April 6, 1988, but before the expiration of the 180-day period beginning on the date of the enactment of the Age Discrimination Claims Assistance Amendments of 1990* [Nov. 3, 1990].

(4) *a civil action* on such claim *was not brought* by the Commission or such person before the running of the statute of limitations.

29 U.S.C. § 626 note (emphasis added).

2. We quote the relevant text of the July 10, 1986 letter:

The EEOC has received and filed a copy of the age discrimination charge filed with the Massachusetts Commission Against Discrimination. Unless you are notified otherwise, we plan no action regarding the charge under the Federal Age Discrimination in Employment Act (ADEA).

The ADEA requires, as a prerequisite to a private lawsuit, that a charge alleging discrimination be filed with the EEOC and an appropriate state agency. Thus, the EEOC's receipt and filing of this charge preserves the charging party's private suit rights.

In order to avoid any misunderstanding, please note that anyone wishing to file a private suit under the ADEA must do so within two (2) years of the date of the alleged discriminatory action (3 years in cases of willful violations). The charging party is free to file a private suit at any time after the expiration of sixty (60) days from the charge filing date noted above, notwithstanding any action by the Commission or the state agency.

3. For example, "disposition" is defined as "final arrangement," Webster's Ninth New Collegiate Dictionary (1989), and "final settlement of a matter," Random House Unabridged Dictionary (2d ed. 1987).

dispositive administrative investigation before the issuance of the EEOC letter.

The July 10, 1986 letter, in text as well as context, more consistently resembles a routine agency notification of the receipt and filing of plaintiffs' administrative charges, as expressly indicated by its introductory acknowledgment that the "EEOC has *received and filed* a copy of the age discrimination charge filed with the Massachusetts Commission Against Discrimination." (emphasis added). As the Seventh Circuit recognized in *Zabielski v. Montgomery Ward & Co., Inc.*, 919 F.2d 1276, 1279 (7th Cir.1990), after the district court decision in the present case, the EEOC routinely issues similar letters upon *receipt* of an administrative charge.[4] We therefore conclude that the July 10, 1986 letter did not constitute notice of the administrative "disposition" of plaintiffs' charges.

## B. *Expiration of ADEA Claims*

The amended Assistance Act addresses two tandem extensions of the ADEA limitations period available to eligible claimants whose claims would otherwise be time-barred. The initial extension period, as originally established in the Assistance Act, commenced on April 6, 1988 and ran for 540 days through September 28, 1989, § 3(b)(1).[5] This initial extension was available to ADEA claimants who filed their EEOC charges after December 31, 1983, § 3(a)(1)(A), and whose ADEA claims lapsed prior to April 7, 1988, § 3(a)(3)(A). The second extension, established by the 1990 Amendments, revives ADEA claims based on EEOC charges filed after April 6, 1985, § 3(a)(1)(B), which lapsed for failure to commence a civil action between April 7, 1988 and May 2, 1991, § 3(a)(3)(B). The second extension spans the 450-day period from November 3, 1990 through January 27, 1992, § 3(b)(2).

A civil action under the ADEA must be brought within two years after the cause of action accrued; Three years in the case of a willful violation. *See* 29 U.S.C. § 626(e) (incorporating statute of limitations under Portal to Portal Pay Act, 29 U.S.C. § 255(a)). Plaintiffs' complaint alleges only willful ADEA violations. The defendant employer argues, and the district court decided, that plaintiffs' causes of action accrued at the time their employment was terminated and, therefore, that Ruggieri, Radzik and Bisceglia had until

---

**4.** The employer in *Zabielski* contended that certain EEOC letters foreclosed the plaintiff employees from utilizing the Assistance Act extension period insofar as the letters constituted notice of disposition under § 3(a)(2)(B). One letter in *Zabielski* was sufficiently similar to those *sub judice* to warrant comparative analysis. The letter began with the EEOC's acknowledgment that it had received the plaintiff's claim from the Illinois Department of Human Rights. It further stated that "[u]nless you request otherwise, we plan no immediate action regarding your charge...." *Id.* at 1278. The Seventh Circuit took special note of the position taken by the EEOC, as *amicus curiae*, by observing that the EEOC "does not view such letters as 'dispositions.' The agency acknowledges all filings in this or a similar manner and often conducts substantial investigations afterwards." *Id.* at 1279. As the *Zabielski* court further noted, to deem such letters "notice of disposition" would frustrate the purpose of the Assistance Act, as "almost everyone who files a timely charge [with the EEOC] receives a letter of this kind long before the period of limitations expires." *Id.*

**5.** There is a 90-day discrepancy in the initial extension period as described in the Assistance Act and in the 1990 Amendments. Under the Assistance Act, the first extension ran for 540 days from April 7, 1988. *See* 29 U.S.C. § 626 note § 3(4) (1988). In the 1990 Amendments, however, Congress, in addition to extending the limitations period by an additional 450-day period, shortened the first extension period from 540 to 450 days. *See* Pub.L. No. 101–504, § 2(b)(1), 104 Stat. 1298, 1298 (1990).

The legislative history of the 1990 Amendments reveals that the first extension period was reduced from *5*40 to *45*0 days as a result of a transpositional error. As originally introduced, the amendments were to have extended the limitations period a second time by 540 days. *See* 136 Cong.Rec. 9473, 9476 (1990). After the bill had been read, Rep. Martinez made the following proposal: "In section 3(b)(2) of the Age Discrimination Claims Assistance Act of 1988, as added by section 2(a)(5) of the bill, strike '540-day' and insert '450-day.'" *Id.* at 9477. The proposal was agreed upon. Despite the fact that, as adopted, the Martinez amendment was to have amended only § 3(b)(2), which pertained to the *new* extension period, § 3(b)(1) (pertaining to the initial extension period) was inadvertently amended to 450 days as well.

December 1988 to commence a civil action, while Frankian had until March 28, 1989. Since their willful ADEA claims had not lapsed by April 7, 1988, as required by section 3(1) of the Assistance Act (by § 3(a)(3)(A) of the amended Assistance Act), the defendant employer urges their dismissal. The defendant additionally asserts that plaintiffs may not escape the pre-April 7, 1988 claim expiration requirement by applying the two-year limitations period because their complaint pleads no nonwillful ADEA violations.

### 1) *Willful ADEA Violations*

■ During the pendency of the appeal, Congress enacted the amended Assistance Act, which extends from November 7, 1990 through January 27, 1992 the limitations period applicable to ADEA claims based on charges timely filed with the EEOC after April 6, 1985, § 3(a)(1)(B), which lapsed between April 6, 1988 and May 2, 1991, § 3(a)(3)(B). As plaintiffs allege willful ADEA violations which were filed with the EEOC on or shortly after June 2, 1986, and lapsed not earlier than December 1988, but not later than March 1989, their willful ADEA claims are not time-barred.[6]

### 2) *Nonwillful ADEA Violations*

No nonwillful ADEA violation involved in the present case would be time-barred, since the Assistance Act saved ADEA claims based on charges timely filed with the EEOC after December 31, 1983, § 3(a)(1)(A), but not sued upon prior to April 7, 1988, § 3(a)(3)(A). The defendant points out, however, that plaintiffs' complaint pleads no nonwillful violations. *But see E.E.O.C. v. Chrysler Corp.,* 729 F.Supp. 1002, 1005 (S.D.N.Y.1990) (complaint alleging only a willful ADEA violation "[s]ubsumed ... cause of action arising out of an ordinary or non-willful violation."). However that may be, the district court indicated its receptivity to a motion to amend the complaint to permit plaintiffs to plead nonwillful claims. *See* Fed.R.Civ.P. 15(a) ("leave [to amend] shall be freely given when justice so requires."). Of course, the district court retains the discretion to consider amendments to the pleadings, following remand.

## II

## CONCLUSION

For the foregoing reasons, the judgment of dismissal is vacated, and the action is remanded for further proceedings before the same district judge.

*Vacated and remanded, with costs to appellants.*

---

**6.** The 1990 Amendments permit eligible claims to be brought *"during"* the second extension period, § 3(a), which commenced on November 7, 1990 and runs through January 27, 1992, § 3(b)(2). Inasmuch as the present civil action, though filed before November 7, 1990, remains pending, plaintiffs' claims based on alleged willful ADEA violations were revived by the 1990 Amendments.